Good morning, Your Honor. My name is Doran Bishop. I represent Mr. Beltran-Quinonez in this matter. Your Honors, I would submit that remand-free sentencing is appropriate in this case because the district court's sentence is premised upon a departure that is not supported by the case law and the legal basis for interpreting the term victims, as used in 2A-6. Further, because it's ultimately an illogical sentence that was imposed, even allowing for that sixth-level increase to sentencing, which resulted in a 30- to 37-month guideline sentence, when one considers that the district court expressly said he would take note of at least four mitigating factors, specifically, Mr. Beltran-Quinonez's diminished capacity, which was undisputed by the government, terms that he was psychotic, delusional, and paranoid. Second, his — the district court said it would take account of his voluntarily waiver of extradition. Third, that he would take account of the lack of criminal history for Mr. Beltran in a fashioning and appropriate sentence. And finally, the government's sentencing recommendation, which here was 24 months, maybe 18 months, but 24 months was what was ultimately endorsed by the government in sentencing. Well, doesn't that put you — everything you've said now, doesn't that put a finger on the real heart of this matter? The district judge said, you know, I don't care about the stinking guidelines. The Ninth Circuit has said, he said, in Muhammad, that guideline departures are just irrevelant in a sense. They're not important in any way. Now, we may have an en banc case that's going to tell us the answer to that one way or the other. But he said, I'm going to put this — try to fit it into this silly form I have to fill out. And so I'll talk about departures as I need to, and so I'll talk about departures. But let me tell you, this is the sense I'm going to give this guy. Guideline departures are no guideline departures, because I don't have to follow the guidelines, and I'm outside the guidelines, and I'm going to consider everything. I'm considering all the stuff that happened. I'm considering the mitigation. I'm considering everything. And this is what I think the proper sentence is. Yeah. That's what he said, right? That's exactly what he said, Your Honor. Okay. So if we give legal credence to that, then, you know, this double counting for governments versus individuals becomes much less important, it seems to me. And so does your statements about things you thought were mitigating become much less important? Because I'm taking it all into account, and here's my answer. Well, I hear that. I would say there are two reasons why I would disagree. Number one is I don't believe that the guidelines can be thrown out the window. I believe Muhammad itself expressly notes that we do need to make sure the guidelines are calculated appropriately. It does say that it's a unitary system of reasonableness after Booker. However, when you have here the district court faithfully applying the guidelines, getting to a number 6, not number 5, not number 7, just he says a 6-level increase and I would have done 8 levels but for this, and he comes out, there's a lot of precision to the district court's analysis. And he comes up to a guideline range of 30 to 37 months. So the first response I would have is that the district court itself said that, but on the other hand, did faithfully attempt to apply the guidelines in reaching a guideline range of 30 to 37 months. Suppose he did make a guideline calculation error. Isn't it harmless in light of all the other findings that he made? I mean, if we, I mean, I look at this and I think we could send this back and say, yes, you made this, this and that error, but the judge would be likely to send some to the 36 months in any event based on his Section 3553A analysis. I don't know if that's true or not. I think that would require guesswork. Well, you know, I've never seen a better 3553A analysis in all the records I've seen. It was a very lengthy hearing and Judge Moskowitz is very thorough. It was a very detailed analysis. Absolutely correct. Yes. It was all on the outside. Right. But I'm not sure that's correct, Your Honor, because at the end of the day, he said 30 to 37 months and then he said other things. I'm going to, he either just was paying lip service to these four mitigating factors and he really wasn't considering them, but I'm not trying to criticize him, but that would be one possibility because it wouldn't make sense to me that he would then sentence Mr. Beltran to 36 months on a 30 to 37 guideline range when he was giving. Counsel. Yes, Your Honor. Counsel, let me interrupt for a second. The fact that he gives him 36 months doesn't necessarily mean he didn't consider those things, does it? It means that he considered them maybe and decided they weren't mitigating enough to go less than 36 months. Isn't that a fair interpretation also? I don't believe it is, Judge Collins, because the upper range was 37 months and he gets 36 months. So on a 30 to 37 month range, he ends up with 36 months. That would mean he basically gets one week credit for diminished capacity, one week credit for, what, having no malicious intent, which the district court expressly found to be the case here. Even in Muhammad, Your Honor, there was an express finding by the district court that, you know, even after all these guidelines have been taken into account and I've departed upward, it's still not enough. I have to go higher. And that's what the district court did in Muhammad. Judge Moskowitz never made any finding that his adjusted guideline range was insufficient to take into account everything. And that was before he considered the mitigating factors. So with the 30 to 37 month range, he starts considering the mitigating factors. Would you have been happier if he said, you know, the range is 36 to 37 months? 30 to 37? Whatever it was. Yeah. The range is X, 30 to 37 months. And, you know, I think what this guy needs is 60 months. But there's some mitigation there, so I'll take off 5. I'll give him 55. Would you feel more comfortable there? Yes. Or I'll do it. Okay. I mean, I would, Your Honor. I just think that the numbers don't add up as it's set forth here. And Judge Moskowitz is a very meticulous judge. And at the end of the day, there is, I'd submit, undeniable sloppiness in terms of, not sloppiness, that's not the right word, but it doesn't add up. 30 to 37 months, and then you get into four mitigating factors that clearly distinguish this case. What's the standard of review? I believe the standard of review would be abuse of discretion. It isn't. It's reasonableness. Well, reasonableness. That's right. Exactly. And so whether it falls within a range, it's not a point. And so, but the reason. What you're asking us to do is to recalculate the sentence, not to step back and look at whether it was what Judge Moskowitz did reasonable. Two components. Maybe the second component, which is what I would argue is illogicality, is a component of reasonableness. Maybe it's a separate component. But there is the first question of, well, you know, 36 months, does that seem right? Does it shock the conscience? I'm not sure what the standard is. It doesn't, I don't believe there's a lot of guidance from the Ninth Circuit. At least I haven't covered a lot of it. It's a Supreme Court case on point. Which would be? Rita. Yes. But, okay. So in answer to your question, Your Honor, my time's almost up. I would just say the issue of illogicality is separate. And I would submit maybe it's a due process issue. It needs to be clear from the record. And to faithfully apply the findings of Judge Moskowitz in terms of the guideline range and the sentence he ultimately ended up with, taking into account the mitigating factors, it's illogical. And I would say, therefore, unreasonable. And, therefore, remand would be appropriate. May I reserve the balance of my time? Sure. Thank you. Good morning, Your Honors. Alice Andresano on behalf of the United States. You have to excuse me. I'm trying to kick this head cold. So if I start coughing, I apologize in advance. Mr. Beltran's sentence should be affirmed. It is clear from the record that, number one, the guidelines were calculated correctly. Judge Moskowitz did more than just pay lip service to the guidelines in applying a departure. He was referring to this Court's language in U.S. v. Muhammad, which came out about a month before the sentencing hearing, where this Court said, we think the better view is to treat the scheme of downward and upward departures as essentially replaced by the requirement that judges impose a reasonable sentence. And I think his comments regarding, you know, forms that he needs to fill out was merely just that the Congress and the forms that are required to be filled out by judges has not caught up with jurisprudence. With that said, he did use the framework of the guidelines to depart upward six levels, and he stated his reasons why the six-level upward departure was appropriate. And that's on excerpts of record, pages 36 through 43, where he talks about the nature of the threat. The threat was bringing in a nuclear warhead to be detonated in Boston. He talked about the widespread effect of this hoax, the fact that a person who is an admitted alien smuggler was smuggled in for Iraqi or excuse me, for Chinese chemists and a couple of Iraqis to bring in a nuclear warhead to be transported across the country to the northeast of Boston. He noted, Judge Moskowitz noted the thousands of man hours, manpower hours, in trying to uncover the, whether this threat was legitimately a threat, and the fact that Mr. Beltran went to great lengths to show credibility for his threat. This wasn't just a phone call. It was, number one, a series of phone calls that Mr. Beltran made, and he provided proof, in his mind, of the credible nature of the threat by throwing that white plastic bag over the fence with the driver's licenses and the photos. All of that is true. Yes. I mean, it's what the judge said. But did the judge err in deciding that I'm going to give a multiple-victim departure after it was found he had found the coins because of the serious effect on a governmental entity? And if he didn't, who were the multiple victims? To answer your question, no, he did not double-count or he did not misapply that guideline. First of all, the But aren't the victims the disruptive government people? Didn't Judge Moskowitz go round and round explaining that these victims were all the people who were disrupted in the government, including Mitt Romney and all the people who worked for him and his poor staff that didn't get to go to the Inaugural? I mean, he was referring to all those very same people when he raised, he departed by six to find that there were multiple victims. And isn't that impermissible? He, I would disagree with your Honor's characterization. He did include all of those other State, Federal, and local individuals and agencies as part of the multiple victims. But I think inherent in this type of threat, i.e., the detonation of a nuclear warhead, that we're talking about other people, citizens, people, residents who live in the United States that were affected by this. These are people that if they wanted to call 911 The crime of conviction was that it was a hoax. Correct. So you wouldn't really say that the victims were people who were potentially bombed. The victims are the people whose lives were disrupted because of the hoax and the cost to the government of having to investigate this and make sure that people were safe. That is true. However, in pre-Booker cases, and I cite them in the brief, U.S. v. Stokes, U.S. v. Adelman, U.S. v. Fopp or Foppe talked about other multiple victims where it's not just the person or the target in which the hoax, the bomb threat was directed to, but it's everybody else who Well, he didn't even really count the person who it was directed to. The person it was directed to were these alien smugglers, right? That's who the intended victim was. The intended victim was his alien smuggling boss. He wanted to shut down the border so his boss would not make money. Yes, that is correct. That was his motivation. But the call was made to 911, which is a state agency, CHP. I think it's in the record. CHP takes the call. I think that's the problem with this. I'm not saying that this wasn't a harmless error, but I do think it was error. The problem is that Mr. Beltran apparently didn't appreciate, by calling 911 and threatening and doing the things he did, that there were other people who would be hurt or disrupted. I mean, he really believed he was going to trip up his alien smuggling boss who he didn't like. It seems in the record that that would be a fair assumption. Yes, he did cause all this other stuff, but I don't think if you're calling and threatening the detonation of a nuclear warhead that somebody could think that the only people that are going to be affected would be the person that you're calling or his alien smuggling boss. I understand his intent was to shut down the border. It did bring additional security to the border, which has effectively shut it down. But we're talking about... He achieved his goal. It did. Which was not really to wrong anyone. Correct. This is a mentally impaired person, too, who isn't likely to be able to fully appreciate. I'm not saying it's right or good or anything. When he did it, I think it's awful. I was just a victim, a multiple victim of a bomb scare myself at the Oakland airport, so I know how disruptive that is. But I'm just saying I think you can't take account of all the disruption and then also take account of those very same disruptive people as the victims. That's what the Ninth Circuit's court did in U.S. v. Mohammed, justifying the eight-level increase. The judge in that case, Judge Anderson out of the Central District, he laid out similar findings of what the eight-level departure was included. It was the nature of the threat, the fact that the person threatened a bomb at the federal complex in Los Angeles, the widespread effect. Granted, there were businesses that lost money as a result of that, but it's the same analysis and the same types of findings that Judge Anderson found in the Mohammed case, which this court affirmed, similar to what Judge Moskowitz did in this case. Could the multiple victims be the California government, the United States government, and the Massachusetts government? Sure. But again, the six-level departure that Judge Moskowitz did was not just on multiple victims. He went through a litany of things that justified the upward departure. And again, it's on excerpts of Record 36 through 43. It was the type of threat and... Are you using departure? In what sense are you using the word departure now? Is departure calculated within the guideline departure or departure outside the guidelines, which is now permitted under Booker? When you say departure, which do you mean? I'm saying departure in the context of the guidelines because Judge Moskowitz put a number on the number of levels he upward departed to the number six. He didn't give eight. He gave six. And he increased it. He went from a base offense level 13 to a 19, or just a defense level 13 to a 19, I believe, in criminal history category one, which yielded a advisory guideline range of 30 to 37 months. So that's how I'm using departures. He still imposed his sentence within the guidelines. Yes, he did. Okay. So I think the language we're using now is sort of confusing. It can be, yes. Is the form that he was filling out something that the Justice Department is requiring district court judges to complete? It is apparently a form that is mandated by Congress that district court judges fill out and all the judges in our district have it. I'm sure Judge Collins knows this. He's nodding his head. It's a form that they need to fill out when completing sentences. Congress needs to update that law. Yes, they do, apparently do. I have 15 seconds left, but I would just say that 36 months, given all the factors, Judge Moskowitz went through every single 3553A factor, took into account all the mitigating factors, and said that this sentence would have been imposed even if he did not depart upward six levels, departures being in the guidelines, and it would have been much higher but for the government's recommendation. Unless there are any questions, I submit. Thank you, counsel. Judge Moskowitz did not impose the sentence inside the guidelines. He imposed the sentence inside the guidelines as he calculated them by increasing it six levels over and above the guidelines actually provided for. So if his calculations were wrong, and I would submit they were, then he did not impose a sentence within the guidelines. He imposed a much higher sentence than that due to the double counting and the other issues here. But didn't he say, counsel, either way you slice it, I'm going to give him 36 months, either way I count the guidelines, whatever, 36 months is what I think is fair? He did say that. But if it figures into that a misunderstanding of the guidelines as he's calculated them and that he's considering, which he must do, if figured into that is a failure to follow his own statements that he will mitigate based on a variety of factors, if figured into that is the absence of any statement that the guidelines I've calculated are not sufficiently high to take into account this fact, then I would submit that remand is appropriate, not as a chiding to Judge Moskowitz, but just as saying, you know, the numbers don't add up here. And in light of this guidance that there is no basis to depart upward six levels, et cetera, it's appropriate for you to take another look at this. Thank you, counsel. Thank you both.
judges: Fernandez, Wardlaw, Collins